Filed 7/16/26  Karraa v. Outfront Media CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANTON KARRAA et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> OUTFRONT MEDIA, LLC, <br><br> Defendant and Appellant, <br><br> THE CITY OF LOS ANGELES, <br><br> Defendant. | B336899 <br><br> (Los Angeles County Super. Ct. No. 20STCP04014) |

  APPEAL from an order of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

  Miller Starr Regalia, Arthur F. Coon, Anthony M. Leones, Angela J. Yu, James L. Swearingen; Davis Wright Tremaine, James R. Sigel, Mary H. Haas and Daniel H. Leigh for Defendant and Appellant.

  Raymond N. Haynes, Jr., for Plaintiffs and Respondents.

  No appearance by Defendant City of Los Angeles.

———————————

# INTRODUCTION

Appellant asks us to reverse the trial court's order denying its special motion to strike the causes of action for waste and violation of the Unfair Competition Law as a strategic lawsuit against public participation under Code of Civil Procedure section 425.16.

We find appellant moving party failed to make a threshold showing that the two challenged causes of action arise from protected activity at prong one of the anti-SLAPP test. We therefore affirm the trial court's ruling.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. *The Parties*

Plaintiff Anton Karraa (Karraa) is president of plaintiff Rabadi Service Station, Inc. (Rabadi), a corporation that owns and operates an Exxon Mobile gas station at 6301 Santa Monica Boulevard in the City of Los Angeles (the City). There are two advertising signs, i.e., billboards, at Rabadi's gas station; we refer to them as billboard #1 and billboard #2.

Defendant Outfront Media, LLC (Outfront) is a California limited liability company "engaged in the outdoor advertising business in the City." Outfront is one of the nation's largest outdoor advertising companies. Until August 31, 2019, Outfront operated billboard #1 at Rabadi's gas station pursuant to a written license agreement between the parties' predecessors-in-interest.

Plaintiff J. Keith Stephens (Stephens) is the president of plaintiff outdoor advertising company, Virtual Media, Inc. (Virtual). He has developed and operated billboards for more than three decades.

2

B.    *The Civil Complaint*

On December 7, 2020, Karraa, Rabadi, Stephens, and Virtual (collectively plaintiffs) filed a complaint alleging one cause of action against the City for writ of mandate and three causes of action against Outfront for violation of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.), waste, and private nuisance.  We discuss the information pertaining to the causes of action against Outfront for waste and UCL violation, as those are at issue on appeal.

The complaint alleges:

The Los Angeles Municipal Code (LAMC) includes a series of ordinances regulating the construction and operation of all signs.  Since 2002, the City has purported to prohibit all new off-site signs (i.e., billboards); this ordinance is known as the "Sign Ban."  LAMC section 14.4.4, subdivision (B)(11) provides that signs are prohibited if they are "off-site signs, including off-site digital displays" but it specified exceptions—this prohibition does not apply to: 1) alterations that conform to LAMC section 91.6216; 2) off-site signs specifically permitted pursuant to a relocation agreement (per Bus. & Prof. Code, § 5412); or 3) off-site signs and off-site digital displays that are permitted based on a legally adopted specific plan or approved development agreement.

Typically, an outdoor advertising company may earn between $30,000 and $50,000 a month from a single billboard site yet pay the owner of the site only $500 per month.  "Many property owners who merely seek fair market value on a ground lease for a Billboard site are immediately threatened with the removal of the existing Billboard.  Because of . . . the purported Sign Ban, . . . outdoor advertising companies can merely 'relocate' to another site next door and prevent any new sign from being

3

installed at the prior site." As a result, the owner of the site finds itself "in a 'take it or leave it' situation" without power to raise rent to fair market value.

Billboard #1 has been in existence at Rabadi's gas station for more than two decades. It was constructed in 1997 by an outdoor advertising company (not Outfront), subject to a license agreement that has been renewed and amended several times since. With the license set to expire on August 31, 2019, Rabadi contacted Outfront and sought a fair rent increase. Outfront rebuffed Rabadi's efforts and refused to negotiate in good faith. Outfront has "thousands of [b]illboards in the City and hundreds of thousand[s] around the county" and "threaten[ed] to just tear down [billboard #1] that has become a legal, non-conforming structure"[1] given the Sign Ban.

Karraa contacted Stephens/Virtual to ascertain if he could obtain "more reasonable rent." They "came to a mutually acceptable agreement to operate at the site of [billboard #1] when Outfront's license expired." Similarly, they reached a separate agreement about billboard #2, also operated by Outfront, for which the license was set to soon expire.

When Outfront learned of the new contract between Rabadi and Virtual, Outfront "told Rabadi unambiguously that if [it] did not renege on [its] agreement with Virtual and to a far lower rent [with Outfront], they would punish [Rabadi] by removing the

---

[1]     LAMC section 91.6216.1: "*Every existing sign and/or sign support structure* constructed under a valid permit and used in conformance with these regulations and Department approvals in effect at the time of construction *shall be allowed to continue to exist under those regulations and approvals even though subsequent adopted regulations and approvals have changed the requirements*." (Italics added.)

4

large steel pole that supported [billboard #1] for more than two decades and seek to prevent any other [b]illboard from ever being operated at the [gas station]." The large steel pole/column supporting the billboard is "generally not reusable" with a scrap value of "no more than $5000 to $7500." Virtual offered to buy the steel pole from Outfront for $180,000, which would have saved Outfront "the $20,000 to $30,000 cost of removal." Outfront did not respond to the purchase offer and instead "applied to the City's Building Department for a permit to remove the existing pole."

Under the heading entitled, "The Unfair Business Tactic of Defendant Outfront," the complaint alleges: Outfront's permit application was made "without the knowledge or permission of Rabadi or Karraa." When Karraa learned of the application and before any permit was issued, he objected telephonically and in writing to the City and informed them that "the owner of the [site] had not consented to the issuance of such a permit." The complaint further alleges, "In terms of evaluating whether Outfront's actions constituted an unfair business practice . . . , it should be noted that what Outfront did is a misdemeanor" pursuant to LAMC section 91.103.2.[2]

The City issued the permit to Outfront without responding to the complaints of Karraa/Rabadi. Karraa called the City's Building Department "before Outfront acted on the wrongfully

---

[2] LAMC section 91.103.2 provides: "Every person who *knowingly and willfully procures a building* and/or grading *permit without the consent of the owner of record of the property* for which the permit is issued, or such person's agent, is guilty of a misdemeanor." (Italics added.)

issued permit," and demanded its cancellation. The City did not respond to the written objection or follow-up calls.

Having obtained the demolition permit, Outfront "fulfilled its threat to remove the above ground portions" of billboard #1 off the service station; it "left untouched all of the underground portions, including the support column and cement foundation, which extends 30 to 40 feet below ground."

Plaintiffs filed a permit application to alter, repair, or rehabilitate billboard #1 by replacing "only the above ground portions [i.e., the steel column] that had been dismantled by Outfront." The "below ground portion [of billboard #1] would cost approximately $250,000 to $300,000 to install, while replacing the above ground portions would cost approximately $150,000 to $200,000. In other words, more than 50 percent of the structure in terms of its cost remains in place on the [gas station]." The 50 percent figure is "highly significant, because LAMC [sections 91.6216.4.1 through 91.6216.4.3] provides that legal, non-conforming [b]illboards may be 'altered, repaired or rehabilitated' so long as the cost of the work does not exceed 50 percent of the replacement cost and there is no increase in height or size."

The City "wrongfully denied" plaintiffs' permit application based on the Sign Ban's prohibition of new billboard construction. Plaintiffs initiated an administrative appeal with the City's Board of Building and Safety Commissioners (the City's Board) and later filed the underlying complaint.

Under the heading for the UCL violation cause of action, the complaint provides: "The wrongful conduct . . . including the intimidation of property owners to demand below market rents, constitutes unlawful, fraudulent and unfair business acts and practices." Outfront's conduct "is representative of their business

6

practices in that they regularly take unlawful, fraudulent or unfair steps to prevent local property owners from obtaining fair market value for ground leases."  Plaintiffs suffered "as a result [of] the violations of law and other wrongful conduct of these [d]efendants."  Plaintiffs requested that Outfront be enjoined from engaging in such wrongful conduct as it related to billboard #2 on Rabadi's gas station (as its license will soon end) and requested restitution of "all monies that [Outfront] avoided paying in ground lease rent by their unfair, illegal and fraudulent efforts to depress such rents below actual fair market value," as well as reasonable attorney fees and costs.

Under the heading for the waste cause of action, the complaint provides: Outfront "committed waste and damaged the [gas station] unreasonably" via its intentional harm to billboard #1.  In the event the harm may be repaired, plaintiffs sought damages including loss of revenue to Virtual and loss of rent to Rabadi during the time of such repairs.  In the event Outfront's harm cannot be repaired, plaintiffs sought damages including the diminished value of the gas station for "the minimum amount of one million dollars to Rabadi and loss of revenue to Virtual." Plaintiffs further sought an award of treble damages pursuant to Code of Civil Procedure section 732, given Outfront's intentional and willful waste "designed as a warning to any property owner who might demand a fair market rent" and "only made possible through the commission of a crime and the making of a false statement to City officials."  Plaintiffs sought an award of treble damages as "highly appropriate" in this instance given that the waste was "intentional" and "punitive in nature."  Plaintiffs also asked the court to issue a prohibitory injunction requiring Outfront "to avoid damaging" billboard #2.

With respect to the City, plaintiffs allege the denial of their permit application to repair or replace the billboard was unlawful and sought a writ of mandate pursuant to LAMC section 91.6216.4 requiring the City to issue said permit. "Based on the conduct of Outfront in connection with [billboard #1] and the City's refusal to follow its own LAMC, [p]laintiffs have a well founded concern that the City will again violate the LAMC and issue to Outfront a permit over the objections of the property owner to damage [billboard #2]." Plaintiffs thus sought a writ of mandate commanding the City to cease violating its duties and obligations under the LAMC.

Finally, the complaint provides that Outfront "will attempt to justify its action based on its alleged right under the license to remove the billboard at the end of the term." Plaintiffs allege that while "the license does speak in paragraph [8] about the sign company removing the structure at the end of the term, it imposes two major conditions," including that the real property "be restored to a condition acceptable to the property owner rather than to the sign company" and "[t]hat the property be restored to the same condition it was in when the [b]illboard was installed." (Boldface omitted.) Outfront's actions were "not the exercise of a legitimate contractual right . . . but instead a malicious and punitive act of vandalism."

The complaint included as exhibits:

1) The license agreement between the parties' predecessors-in-interest for billboard #1, for the term December 1, 2010 until November 30, 2015, which "shall continue thereafter on a month to month basis, subject to the termination rights of either party contained in this License." Either party "may terminate this License . . . upon thirty (30) days prior written notice delivered to

8

the non-terminating party. *In the event of such termination, Licensee shall remove the Sign including, but not limited to the above-grade and below-grade sign structures, illumination facilities and utility connections, and all other appurtenances thereto, and Licensee shall restore the Property to its condition prior to the Effective Date in a manner acceptable to Licensor,* ordinary wear and tear excepted . . . . If Licensee fails to perform its obligations . . . , Licensor, in its sole discretion, shall have the right, but not the obligation, to remove all such signs, structures, and any appurtenances thereto and restore the Property to such satisfactory condition at the sole cost and expense of Licensee." (Italics added.)

2) The lease agreement dated November 16, 2018 between Karraa/Rabadi and Stephens/Virtual for a term of 15 years, where Stephens agreed to pay Karraa $7,000 per month. Virtual/ Stephens "shall be responsible for the cost to acquire the sign or to rebuild it in an amount not to exceed $150,000."

3) The license agreement between the parties' predecessors-in-interest regarding billboard #2.

4) The lease agreement dated October 26, 2020 between Karraa/Rabadi and Stephens/Virtual regarding billboard #2, specifying monthly rent for $3,500.

## C. *Special Motion to Strike*

On February 19, 2021, Outfront filed a special motion to strike the causes of action for waste and UCL violation in plaintiffs' complaint as a strategic lawsuit against public participation under the anti-SLAPP statute, citing Code of Civil

Procedure[3] section 425.16.  Outfront also requested an attorney fees award should it prevail on its motion.

The declaration of Cameron Hall—Outfront's real estate representative since August 2018—filed in support of the anti-SLAPP motion, provides: "Upon Rabadi's termination of the License Agreement, [Outfront] proceeded with the removal of one of the two billboards . . . from the [gas] station, as required, agreed, and consented to under the License Agreement.  Before [Outfront] could remove its billboard, however, the City . . . regulations required it to apply for a permit from the City's Department of Building and Safety approving such removal." The City approved Outfront's permit application on August 22, 2019.  Outfront's permit application, attached as an exhibit to Hall's declaration, includes the following relevant language, followed by Hall's signature: "By signing below, I certify that . . . *[t]his permit is being obtained with the consent of the legal owner of the property*." (Italics added.)  The permit application identifies Rabadi as the owner.

On September 21, 2023, plaintiffs filed their opposition to Outfront's anti-SLAPP motion.  They argued their claims "are not predicated on the permit application but on the damage done by Outfront to their reversionary interest in the real property." "Outfront's intentional and malicious destruction of a legal nonconforming use is the basis for plaintiffs' complaint and not its unauthorized application for a building permit."  (Boldface and some capitalization omitted.)

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

The declaration of Stephens, filed in support of plaintiffs' opposition, provides: Karraa "explained to me that he had been unable to negotiate a renewal of the lease for the Subject Billboard at a fair market value and that all his efforts to do so had been utterly ignored by Outfront. Mr. Karraa . . . told me that Outfront had threatened [to] just tear down the Subject Billboard if he did not accept the amount of rent they were willing to offer." On August 1, 2019, Stephens emailed Outfront and gave a 30-day written notice of termination (attached as an exhibit) regarding its operation of billboard #1. On August 13, 2019, Stephens sent Outfront "written authorization [he] had received from Mr. Karraa to terminate the lease." Stephens sent another letter (attached as an exhibit) offering to pay Outfront $180,000 to leave billboard #1 in place at the time it vacated the gas station. Having received no response from Outfront, Stephens "checked the status of the [gas station] on the official website of the [City's] Department of Building and Safety" and "discovered that the website showed . . . Outfront had applied . . . for a permit to demolish the Subject Billboard." On August 20, 2019, Stephens mailed a copy of Karraa's letter to the City's Building Department (attached as an exhibit), stating: "I do not authorize issuance of the demolition permit to the billboard company and want it cancelled if it has already been issued. [Stephens] has my authority to act on my behalf." Stephens telephoned the City's Building Department and spoke with Sam Chang "the same day to explain that the owner of the real property had not consented to the issuance of any permit to demolish the structure." Stephens also called Outfront's real estate representative Hall and "demanded that the permit be cancelled and that Outfront leave [billboard #1] undamaged." On

11

August 26, 2019, Outfront sent a construction crew and removed the above ground components of billboard #1.

D. ***Trial Court's Ruling***

On January 19, 2024, the trial court denied Outfront's special motion to strike. As to the first prong, the court found Outfront had not met its burden to show that plaintiffs' causes of action for UCL violation and intentional waste arise from protected conduct. "[B]y its express terms, the waste claim is based on, and arises out of, the removal of the billboard . . . itself. While the procurement of a permit was part of the removal, the act of filing for the permit is only incidental to the harm alleged." "Here, the pursuit of a . . . permit is collateral to the parties' dispute. The gravamen of Plaintiffs' [c]omplaint is that the license agreement did not require removal and that Defendant needed to obtain Plaintiffs' consent before it removed the billboard. The thrust of Defendant's defense is that the license agreement required removal, and that the license agreement itself expressly provided Defendant's consent for removal." "Moreover, while Plaintiffs allege that Defendant committed a misdemeanor by falsely representing that it had Defendant's consent to remove the billboard, Plaintiff is not actually claiming harm based on the filing of the permit itself, but on the removal of which the permit was only a necessary procedural step. While the removal could not have been lawfully conducted without the permit this does not mean that the overall thrust of Plaintiffs' [c]omplaint is the permit process." "[T]he permit application allegations are *collateral* ones which provide context for the breach of contract dispute, and aren't themselves a basis for recovery." (Italics added.) Having found that Outfront failed to meet prong one of the anti-SLAPP statute, the trial court did not

reach prong two, that is, whether plaintiffs demonstrated a probability of prevailing on their claims.

Outfront timely appealed.

## DISCUSSION

On appeal, Outfront contends it "established that Plaintiffs' UCL and waste claims both arose from protected activity— namely, Outfront's application to [the City's Building Department] for a permit to remove the billboard, which Plaintiffs claim was unfair, fraudulent, and illegal. The trial court concluded otherwise only by committing two errors of law. First, it focused on the 'gravamen' or 'essence' of Plaintiffs' causes of action as a whole, rather than assessing whether Plaintiffs sought relief based at least in part on Outfront's permit application. Second, it treated Plaintiffs' mere allegation that Outfront's permit application was criminal as though that were a conclusively established fact. Because, under the proper analysis, Plaintiffs' claims arose from protected conduct, Plaintiffs bore the burden of producing evidence to demonstrate they have a probability of prevailing. Plaintiffs did not come close to meeting that burden."

A. ***Standard of Review***

We review de novo a trial court's ruling on a special motion to strike pursuant to section 425.16. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) "In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1652.) We consider

13

"the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) In considering the pleadings and declarations, we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

Because our review on appeal is de novo, we do not rely on the trial court's reasoning below; accordingly, Outfront's contention that the trial court applied "an abrogated 'gravamen' standard" is immaterial.

B.  ***Applicable Law***

Section 425.16 provides, inter alia, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An " 'act in furtherance of a person's right of petition or free speech' " is defined in section 425.16 to include, in relevant part, "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (*Id.*, subd. (e)(2).) "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons

14

having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.)

The Legislature enacted section 425.16 to prevent and deter "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) Thus, the purpose of the anti-SLAPP law is "not [to] insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

When a party moves to strike a cause of action under the anti-SLAPP law, a trial court evaluates the special motion to strike by implementing a two-prong test: (1) has the moving party "made a threshold showing that the challenged cause of action arises from protected activity" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056); and if it has, (2) has the non-moving party demonstrated that the challenged cause of action has " 'minimal merit' " by making "a prima facie factual showing sufficient to sustain" a judgment in its favor? (*Baral, supra,* 1 Cal.5th at pp. 384–385; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93–94; see also § 425.16, subd. (b)(1)). Thus, after the first prong is satisfied by the moving party, "the burden [then] shifts to the [non-moving party] to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral*, at p. 396.)

## C. *Anti-SLAPP Prong One: Arising from Protected Activity*

Outfront contends plaintiffs' complaint advances UCL and waste claims that arise from Outfront's protected permit

application.  Outfront's initial burden at step one is to show that plaintiffs' causes of action for UCL violation and waste arise from protected conduct/activity.  (*Park*, *supra*, 2 Cal.5th at p. 1061.)

There is no question that submitting permit applications to the City, an executive body, is petitioning activity protected by section 425.16, subdivision (e).  (See *Midland Pacific Building Corp v. King* (2007) 157 Cal.App.4th 264, 272 ["submission of the High Density Tract Map to the planning commission and city counsel" are acts "in the course of an official proceeding and were clearly in furtherance of [defendant]s' right of petition and free speech."]; see *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 194–195 (*M.F. Farming Co.*), disapproved on other grounds in *Baral*, *supra*, 1 Cal.5th at p. 396, fn. 11 [site plans for the development of defendant's property submitted to the City of Watsonville in connection with its permitting process qualifies as an official proceeding per § 425.16, subd. (e)(2)]; see also *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 373 [the City of Costa Mesa's planning department qualifies as "an executive body" per § 425.16, subd. (e)(2)].)  Outfront is correct in that regard.

Outfront is, however, incorrect in its assertion that plaintiffs' claims for UCL violation and waste arise from this protected conduct.  We explain why.

"The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute.  A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and *not just evidence of liability or a step leading to some different act for which liability is asserted*.'  [Citation.]  To

16

determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884, second italics added (*Wilson*); see also *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); see also *Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 783.)

Our preliminary task is to identify the alleged conduct or activity by Outfront that supplies the elements of plaintiffs' causes of action and forms the basis for Outfront's liability. (*Willis v. The Walt Disney Co.* (2025) 115 Cal.App.5th 1001, 1013 (*Willis*); see *Wilson*, *supra*, 7 Cal.5th at p. 884.)

1. **Cause of Action for UCL Violation**

We begin with the UCL claim.

The scope of the UCL is broad. (*Willis*, *supra*, 115 Cal.App.5th at p. 1013.) The UCL does not proscribe specific acts, but broadly prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*).) Because the statute is framed in the disjunctive, a business practice or act need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair competition. (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1381 (*Hale*); *Willis*, at p. 1013.) Therefore, an act or practice is "unfair

17

competition" under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice.  (*Hale*, at p. 1381.)  Virtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200.  (*Hale*, at p. 1383.)  The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949; see *Kwikset*, at p. 320.)

To validly state a claim for violation of the UCL, the complaint must specify 1) a proscribed activity—a business act or practice forbidden by law or, even if not specifically prohibited by law, is unfair or fraudulent (*Hale*, *supra*, 183 Cal.App.4th at p. 1381; see Bus. & Prof. Code, § 17200); 2) actual injury—private party suffered an injury in fact and has lost money or property sufficient to qualify as injury in fact, i.e., economic injury (Bus. & Prof. Code, § 17204; *Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 555); and 3) causation—party must establish that the economic injury was the result of or caused by the unfair business practice (*Kwikset*, *supra*, 51 Cal.4th at p. 322).

Here, the section entitled "Preliminary Allegations" in plaintiffs' complaint provides context, in great detail, about the Sign Ban and how because of it, "Many property owners who merely seek fair market value on a ground lease for a Billboard site are immediately threatened with the removal of the existing Billboard.  Because of . . . the purported Sign Ban, . . . outdoor advertising companies can merely 'relocate' to another site next door and prevent any new sign from being installed at the prior site."  As a result, the owner of the site finds itself "in a 'take it or

18

leave it' situation" without power to raise rent to fair market value. The complaint alleges Outfront unfairly rebuffed Rabadi's efforts seeking a fair rent increase and refused to negotiate as it has "thousands of [b]illboards in the City and hundreds of thousand[s] around the county" and "threaten[ed] to just tear down [billboard #1] that has become a legal, non-conforming structure" given the Sign Ban. The complaint also alleges that upon learning of the new contract between Rabadi and Virtual, Outfront told Rabadi "if [it] did not renege on [its] agreement with Virtual and to a far lower rent [with Outfront], they would punish [Rabadi] by removing the large steel pole that supported [billboard #1] for more than two decades and seek to prevent any other [b]illboard from ever being operated at the [gas station]." Despite more than one offer from Karraa/Rabadi and Stephens/Virtual to purchase the steel pole from Outfront which would have saved Outfront the $20,000 to $30,000 cost of removal, Outfront ignored communications, obtained a permit to remove the billboard's pole, and "fulfilled its threat to remove the above ground portions" of billboard #1 from Rabadi's gas station. In doing so, Outfront "[i]ntimidat[ed] other small property owners in order to discourage them from also seeking a fair rental value," "[c]ontinu[ed] its regular business practice of artificially suppressing rents on the thousands of [billboard] sites that it leases in the City," and "[p]unish[ed] Karraa and Rabadi for seeking a fair rental value."

These allegations regarding Outfront's oppressive and threatening acts and conduct—not Outfront's permit application—form the basis for Outfront's liability for unfair business practice. (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 907 ["an 'unfair' practice is one that offends

19

established public policy, that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, or that has an impact on the victim that outweighs defendant's reasons, justifications, and motives for the practice"]; *Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, 1498; see *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 186–187, italics added ["[T]o guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or *proof of some actual or threatened impact on competition.*"]; see *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718 [" ' "the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim" ' "].) Rabadi allegedly suffered actual injury in that it "damaged the [gas station] unreasonably" and caused both loss of rent to Rabadi, loss of revenue for Stephens/Virtual, as well as diminished the value of the gas station for the minimum amount of one million dollars to Rabadi.

Nonetheless, we agree with Outfront that plaintiffs' UCL claim also arises, at least in part, from Outfront's protected act of submitting a permit application. A fair reading of the complaint demonstrates there is a claim for *unlawful* UCL violation based on Outfront's filing of the permit application, in addition to the *unfair* UCL violation based on Outfront's threatening conduct with respect to both billboards. Under the heading of the complaint entitled "second cause of action" for "[v]iolation of [UCL]," plaintiffs discuss Outfront's "wrongful conduct . . . including the intimidation of property owners to demand below

20

market rents" and how it "constitutes *unlawful*, fraudulent and unfair business acts and practices." (Italics added.) The complaint provides that plaintiffs suffered "as a result of the *violations of law* and other wrongful conduct of these defendants." (Italics added.) The cause of action for UCL violation "refer[s] to and incorporate[s] . . . by reference" all preceding paragraphs, including: "In terms of evaluating whether Outfront's actions constituted an unfair business practice . . . , it should be noted that what Outfront did is a misdemeanor" pursuant to LAMC section 91.103.2 (i.e., the knowing and willful procurement of a permit without the consent of the property owner). These are not allegations of protected activity that merely provide context or are incidental. (*Baral*, *supra*, 1 Cal.5th at p. 394.)

In fact, plaintiffs advance theories of liability under all three of the UCL's prongs—unfair, unlawful, and fraudulent. Plaintiffs confirm this in their brief on appeal, in their argument for prong two of the anti-SLAPP analysis: "*The UCL claim is predicated on both unlawful and unfair business practices.* Outfront violated [LAMC] section 91.103.2, which expressly prohibits the procurement of a building permit without the consent of the property owner and classifies such conduct as a misdemeanor. This violation alone *satisfies the 'unlawful' prong* of the UCL. . . . Furthermore, *by submitting a permit application under penalty of perjury falsely claiming the property owner's consent, Outfront engaged in fraudulent conduct* within the meaning of Business and Professions Code section 17200." (Italics added.) Thus, the UCL cause of action, with respect to its unlawful and fraudulent components, rests on Outfront's protected activity of submitting a permit application to the City.

21

Courts frequently refer to a count that alleges both protected and unprotected activity as a " 'mixed cause of action' " (*Baral, supra*, 1 Cal.5th at p. 382), "that is, a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not" (*Bonni, supra*, 11 Cal.5th at p. 1010). An anti-SLAPP motion may be used to attack specific allegations constituting a claim within a pleaded count. (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 43 (*Newport Offices*).) *Baral* considered and disapproved a line of cases that had held an anti-SLAPP "motion lies *only* to strike an entire count as pleaded in the complaint." (*Baral*, at p. 382.) "Such a rule would allow a plaintiff, through artful pleading, to shield particular allegations of protected activity, themselves sufficient to give rise to a claim for relief, from a motion to strike by intermingling them with unprotected acts." (*Bonni*, at p. 1010.) "Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Ibid.*) "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Id.* at p. 1009.)

While Outfront may seek to strike some of the allegations in the mixed UCL violation claims, it is "not entitled to wholesale

22

dismissal of these claims under the anti-SLAPP law." (*Bonni*, *supra*, 11 Cal.5th at p. 1004; see *Newport Offices*, *supra*, 23 Cal.App.5th at p. 48 ["under *Baral*, an anti-SLAPP motion may be directed to specific allegations of protected activity which constitute claims for relief but do not constitute an entire cause of action as pleaded."].)  Where the motion to strike is directed to the entire complaint or cause of action, the trial court must deny the motion if there is *any* claim that does not arise from protected activity; the burden is on the moving party to identify the specific claims based on protected activity that it seeks to strike.  "This is crucial because complaints frequently include claims arising from protected activity alongside claims arising from unprotected activity, as well as 'so-called "mixed cause[s] of action" that combine[] allegations of activity protected by the statute with allegations of unprotected activity.' " (*Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1107, quoting *Baral*, *supra*, 1 Cal.5th at p. 381.)  Although a court may grant a motion to strike individual allegations of protected activity within a mixed cause of action, a court is not required to do so if the movant has taken the position that the entire cause of action arises from protected activity and requests that the entire cause of action be stricken. (See *Park v. Nazari*, at p. 1106; see *Dalrada Fin. Corp. v. Bonar* (S.D. Cal., July 16, 2025, No. 24-cv-2166-WQH-BLM) 2025 U.S. Dist. LEXIS 136766 at p. *30.)  More specifically, the court is "not required to take on the burden of identifying the allegations susceptible to a special motion to strike. . . . [T]he defendant must propose where to make the incisions." (*Park v. Nazari*, at p. 1109.)

Notwithstanding the allegations of unprotected and protected conduct in connection with the UCL cause of action, Outfront moved to strike the cause of action "in [its] entirety."

Outfront remained steadfast with its request to strike the cause of action entirely—even on appeal, Outfront requests that we "reverse the trial court's order and remand with instructions to strike Plaintiffs' UCL . . . claims." Outfront did not provide us with an alternative that delineates the discrete allegations within the UCL violation cause of action that should be stricken, as the *unfair* business practice claim/component in the UCL cause of action does not arise from anti-SLAPP protected activity. (See *Park v. Nazari*, *supra*, 93 Cal.App.5th at p. 1109 ["This is done by identifying, in the initial motion, each numbered paragraph or sentence in the complaint that comprises a challenged claim" based on protected activity.].) This, despite the fact that Outfront confirmed in its brief on appeal that "[i]n *Baral*, the Court held that 'an anti-SLAPP motion, like a conventional motion to strike, *may be used to attack parts of a count as pleaded.*' " (Italics added.)

While an anti-SLAPP motion may challenge any claim for relief founded on allegations of protected activity, it does not reach claims based on unprotected activity. (*Baral*, *supra*, 1 Cal.5th at p. 382.) Outfront's failure to demonstrate that the UCL cause of action was based solely on protected conduct as well as its failure to differentiate the allegations of protected conduct from those based on unprotected conduct, mandate affirming the trial court's order denying Outfront's anti-SLAPP motion as to the UCL cause of action. (See *Park v. Nazari*, *supra*, 93 Cal.App.5th at p. 1106 ["Because the Nazaris moved to strike only the entire complaint, and did not identify in their motion individual claims or allegations that should be stricken even if the entire complaint were not, the trial court was permitted to deny the anti-SLAPP motion once it concluded—correctly—that

the complaint presented at least one claim that did not arise from anti-SLAPP protected conduct."].)[4]  Outfront thus failed to carry its burden at prong one.

This is similar to what took place in *Littlefield v. Littlefield* (2024) 106 Cal.App.5th 815.  The reviewing court there found: "Notwithstanding the diverse range of allegations and requests for relief, appellants moved to strike the petition altogether, or alternatively—although it is not in any meaningful sense an 'alternative'—every *cause of action in its entirety*.  In an understated concession relegated to a footnote of their trial court briefing, appellants did acknowledge that 'not everything in the Petition involves protected activity.' . . .  [T]hey contended that a 'mixed' cause of action is subject to an anti-SLAPP motion as long as at least one of the underlying acts is protected conduct."  (*Id.* at p. 825, italics added.)  "Appellants' motion, however, did not identify any 'particular allegations' of protected activity that they contended should be stricken. And *since they did not show* that the petition or *any entire cause of action was based solely on protected activity, they did not show that the court could properly strike the petition or all of its causes of action—the only relief they*

---

[4]     A court "*may* parse the claims in a complaint even when an anti-SLAPP movant does not discharge his or her burden to, as *Baral* says, 'identify[ ] all allegations of protected activity, and the claims for relief supported by them' (*Baral, supra,* 1 Cal.5th at 396)"; a court is not *required* to do so.  (*Park v. Nazari, supra,* 93 Cal.App.5th at p. 1109, fn. 5.)  "[T]he court can properly deny the [anti-SLAPP] motion so long as the court concludes the movant is not entitled to the relief sought, i.e., so long as the court concludes the complaint [or cause of action, in this case] presents at least one claim that does not arise from anti-SLAPP protected activity."  (*Ibid.*)

25

*sought.*" (*Id*. at p. 826, italics added.) The reviewing court held that appellants in *Littlefield* "did not show that the petition or any cause of action asserted in it was based solely on protected activity, and they did not identify individual allegations or claims that they believed should be stricken even if the petition or entire causes of action were not," and as such, found that the trial court had "permissibly denied their motion." (*Id*. at p. 827.)

In a similar scenario in *Bonni*, the California Supreme Court found: "[Bonni's] complaint also identifies a handful of miscellaneous retaliatory conduct not explicitly tied to any specific event or action: that the Hospitals created a hostile work environment, blocked Bonni from career opportunities, failed to protect him from retaliation, subjected him to intolerable work conditions, and misused his private, confidential health information. The burden is on the Hospitals to demonstrate that each of these allegations entails protected activity. [Citation.] In the trial court, the Hospitals did not address Bonni's allegations individually. In this court, they offer no argument directed at these allegations and do not explain how they arise from peer review proceedings or any other protected activity. Accordingly, they have not carried their burden." (*Bonni*, *supra*, 11 Cal.5th at pp. 1023–1024.) We similarly find Outfront failed to carry its burden for the UCL cause of action.

2. **Cause of Action for Waste**

" '[W]aste is conduct (including in this word both acts of commission and of omission) on the part of the person in possession of land which is actionable at the behest of, and for the protection of the reasonable expectations of, another owner of an interest in the same land. . . . Thus, waste is, functionally, a part of the law which keeps in balance the conflicting desires of

26

persons having interests in the same land.' " (*Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 597–598.)  Waste is defined as an unlawful act or omission of duty on the part of a tenant, resulting in permanent injury to the property.  (*Avalon Pacific-Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC* (2011) 192 Cal.App.4th 1183, 1212.)  In order to state a cause of action for waste, a plaintiff must plead and prove that the defendant was under a duty to preserve and protect the property involved.  (*Ibid*.)  " 'Waste occurs only when the injury to real property is "sufficiently substantial and permanent." ' "  (*Schellinger Brothers v. Cotter* (2016) 2 Cal.App.5th 984, 999.)  " 'Waste will [be] found only when the market value of property is permanently diminished or depreciated.' "  (*Id.* at p. 1000.)

Section 732 permits an action for waste and provides there may be judgment for *treble damages* upon a showing of willfulness or maliciousness; whether or not damages should be trebled is left to court's discretion.  (§ 732; *Kanner v. Globe Bottling Co.* (1969) 273 Cal.App.2d 559, 568.)  Proof of an overt destructional urge is not required to show waste committed in bad faith, where plaintiff may point to the defendant as a reckless, intentional, and even malicious despoiler of property, causing damage that is unrelated to financial fluctuations in the economy at large.  (*Schellinger Brothers v. Cotter*, *supra*, 2 Cal.App.5th at p. 1001.)

Here, Outfront argues "much of [p]laintiffs' waste cause of action stems from the alleged damage to their property from the removal of the billboard.  But [p]laintiffs also seek to impose liability in part based on Outfront's permit application that led to that removal."  Outfront contends that plaintiffs "explicitly base their claim for treble waste damages on Outfront's protected

27

conduct." Outfront argues "[b]ecause the protected permit application is 'alleged to justify a remedy' for the waste claim, that claim likewise arises out of protected activity." We disagree.

Plaintiffs' complaint alleges that Outfront "committed waste and damaged the [gas station] unreasonably" via its intentional harm to billboard #1 by dismantling the above ground steel column supporting the billboard. The express terms of the complaint demonstrate that plaintiffs' waste claim is based on Outfront's removal of the billboard itself. Plaintiffs' request for a specific type of damages (i.e., treble per section 732) falls outside the elements of a waste cause of action.

In addition to plaintiffs' requested damages including loss of revenue to Virtual, loss of rent to Rabadi, and/or the "minimum amount of one million dollars to Rabadi and loss of revenue to Virtual," plaintiffs additionally requested treble damages pursuant to section 732, given Outfront's "intentional" waste that was "punitive in nature." While plaintiffs requested an award for discretionary treble damages based in part on Outfront's false statement on the permit application to the City, a request for treble damages does not qualify as a "cause of action" that can be independently struck via an anti-SLAPP motion. *Baral* does not construe section 425.16 to allow a court to strike a prayer or request for specific type of relief; nor do the cases cited by Outfront. *Zanger v. City of Pasadena* (C.D. Cal., Jan. 23, 2007, CV 06-5376 ABC (Ex)) 2007 U.S. Dist. LEXIS 112174, for instance, did not separately strike a punitive damages prayer, but struck it because it was based on an underlying defamation cause of action that was stricken. (*Id*. at p. *10 ["Plaintiff has not, and cannot establish a reasonable probability of prevailing on his defamation claim. His sixth cause of action is hereby

28

STRICKEN. *To the extent to which Plaintiff seeks punitive damages based on the sixth cause of action, that claim is also* STRICKEN."].)

Indeed, other cases have held that a remedy is not an appropriate target for an anti-SLAPP motion. (See e.g., *Golden Gate Land Holdings, LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 91 [claim for injunctive relief "is not a cause of action but instead a request for a remedy not subject to the anti-SLAPP statute"]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1360–1361, fn. 2 ["specific performance and injunctive relief are equitable remedies and not causes of action for injuries. [Citations.] The anti-SLAPP statute applies only to a 'cause of action.' "]; *Coretronic Corp v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1392 ["the remedy sought does not affect whether the claim is based on protected activity"]; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162, fn. omitted [prayer for injunction preventing defendants from evicting plaintiffs was irrelevant to whether cause of action was based on protected activity, as "[a]n injunction is a remedy, not a cause of action. Accordingly, the SLAPP statute does not apply where it is the prayer for an injunction which arises from an act in furtherance of a person's right of petition or free speech" because SLAPP motions lie only as to causes of action].)

A request for treble damages does not constitute a cause of action but is simply one of several remedies sought for plaintiffs' waste cause of action. (See *Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 163–164 [" 'There is no cause of action for punitive damages. Punitive or exemplary damages are remedies . . . . "Punitive damages are merely incident to a cause of action, and can never constitute the basis thereof." ' "]; accord

29

*McLaughlin v. National Union Fire Ins. Co.* (1994)
23 Cal.App.4th 1132, 1163 ["In California there is no separate
cause of action for punitive damages."].)  Outfront has not
established that a request for treble damages presents a strikable
portion of a cause of action/complaint.  We find an anti-SLAPP
motion is not properly brought to strike a pleaded remedy or
prayer for relief, rather than a claim/cause of action, based on
protected activity; the anti-SLAPP statute only authorizes a court
to strike a cause of action.  (§ 425.16, subd. (b)(1).)

Thus, our independent review of the pleadings and the
supporting declarations discloses plaintiffs' cause of action for
waste is not based on conduct that is protected activity.

D.    ***Anti-SLAPP Prong Two: Probability of Prevailing on
      Cause of Action***

If a defendant makes its required showing in the first step,
the burden then shifts to plaintiffs to demonstrate the merit of
the claim by establishing a probability of success.  (*Howard
Jarvis Taxpayers Assn. v. Powell* (2024) 105 Cal.App.5th 955,
970.)  "If the defendant does not demonstrate th[e] initial prong,
the court should deny the anti-SLAPP motion and need not
address the second step."  (*Hylton v. Frank E. Rogozienski, Inc.*
(2009) 177 Cal.App.4th 1264, 1271.)

Because Outfront failed to satisfy its initial burden, we do
not reach the second prong of the anti-SLAPP analysis—namely,
whether plaintiffs have established a probability of prevailing on
the merits.  (See *Baral, supra,* 1 Cal.5th at p. 396 [only "[i]f the
court determines that relief is sought based on allegations arising
from activity protected by the statute" is the "second step . . .
reached"]; see *Wang v. Wal-Mart Real Estate Business Trust*
(2007) 153 Cal.App.4th 790, 811 ["Because of the conclusions we

30

have reached regarding the first prong of the anti-SLAPP analysis, we need not proceed to evaluate whether plaintiffs adequately showed a probability of prevailing in the action."].)

## DISPOSITION

The trial court's order denying Outfront's special motion to strike is affirmed.  Costs are awarded to respondents.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

VIRAMONTES, J.

SCHERB, J.